**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1165

ROBIN ANN BURKHART,

Plaintiff - Appellant,

v.

OFFICER R. DICKEL, (#4696); OFFICER M. VLACH, (#5346),

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge. (1:12-cv-03320-CCB)

Submitted: January 30, 2018                    Decided: May 2, 2018

Before GREGORY, Chief Judge, and WYNN and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Anton L. Iamele, IAMELE & IAMELE, LLP, Baltimore, Maryland, for Appellant. Michael E. Field, County Attorney, James S. Ruckle, Jr., Jordan V. Watts, Jr., Assistant County Attorneys, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robin Ann Burkhart filed a complaint against the Appellees, Ryan Dickel and Michael Vlach, police officers with the Baltimore County Police Department, alleging that they used excessive force in arresting her, causing severe injuries to her left leg. Following a trial, the jury found against Burkhart on all counts and the district court denied Burkhart's motion for a judgment as a matter of law or in the alternative a new trial. Burkhart appeals, arguing that the district court abused its discretion in admitting the challenged testimony of one of the Appellees' experts regarding whether she had osteoporosis at the time of the injury.

We review the district court's application of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), for abuse of discretion. *Nease v. Ford Motor Co.*, 848 F.3d 219, 228 (4th Cir.), *cert. denied*, 137 S. Ct. 2250 (2017). A district court abuses its discretion if it makes an error of law in deciding an evidentiary question or if its conclusion rests on a clearly erroneous factual finding. *Id.*

Prior to the trial, Burkhart sought to exclude some of the opinions one of the Appellees' experts, radiologist Dr. Barry Daly; specifically, Burkhart argued that Daly should not be allowed to opine that she suffered from osteoporosis in her left leg on the date of her arrest based on Daly's review of scans of that leg performed three weeks after her arrest, and that Daly should not be allowed to testify regarding the mechanism of her injury. The district court sustained Burkhart's objection to Daly offering an opinion on the mechanism of her injury, but denied Burkhart's motion with respect to Daly's other opinion; at trial, Daly testified that osteoporosis was evident in the scan of Burkhart's leg

2

taken after she sustained her injury and that the condition would have been present on the date of Burkhart's arrest. On appeal, Burkhart argues that the district court failed to perform its gatekeeping function in allowing this testimony at trial and that Daly, in contravention of the district court's order, testified regarding the mechanism of her injury. We disagree.

In *Daubert*, the Supreme Court explained that Fed. R. Evid. 702 governs the standard for evaluating the admissibility of expert testimony. *Id.* at 228-29. A district court must exercise a gatekeeping responsibility in evaluating expert testimony, ensuring that experts' opinions both rest on reliable foundations and are relevant. *Id.* at 229. "To be relevant under *Daubert*, the proposed expert testimony must have a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 229 (internal quotation marks omitted). "With respect to reliability, the district court must ensure that the proffered expert opinion is based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Id.* (internal quotation marks and emphasis omitted).

Here, Burkhart concedes that Daly could properly offer an opinion regarding her osteoporotic condition on the date that the scan occurred, but was not qualified to opine that such condition existed three weeks prior as she could have developed the condition in that interim period as a result of the injuries to her knee. However, there was competing expert testimony at trial regarding the length of time such a condition could develop as a result of the type of injuries Burkhart sustained and her subsequent lack of use of the leg. Daly explained that in his opinion, the severity of Burkhart's condition

could not have developed within the three weeks between her injury and the scan as, based on his experience and expertise, the degree of bone deterioration evident in the scan could not be explained by Burkhart's disuse of the leg, medications she was taking, and lack of blood flow to the leg. Daly also disagreed with the conclusion of other experts that Burkhart suffered from assymetrical osteoporosis—where the bone deterioration in her left leg was significantly more advanced than in Burkhart's other bones—based on his opinion that the degree of difference between the bone deterioration was not substantial and that the difference, which appeared on scans taken months and years after her injury, could be explained by her lack of use of the leg over that ensuing period of time. Therefore, Daly explained his methodology in determining that Burkhart suffered from osteoporosis on the date of her arrest, and his opinion rested on a sufficient foundation.

Daly's opinion was also relevant to a central issue in the case. The expert testimony at trial demonstrated that the type of injuries Burkhart suffered typically result from high impact events such as car accidents, which did not occur here. Daly concluded that Burkhart's osteoporosis could have accounted for the severity of her injuries because bone mineral density is one of the factors affecting the point at which a bone will fail, and break or fracture. Although the density of the bone is not the only pertinent factor in making this determination, it is certainly relevant to the question of the amount of force necessary to cause the bone to fail. Thus, the district court did not abuse its discretion in admitting this testimony.

4

Furthermore, Daly did not testify regarding the mechanism of Burkhart's injuries in contravention of the district court's pretrial ruling. Daly merely stated that none of the accounts of the witnesses to the incident, including that of Burkhart and the Appellees, explained the severity of Burkhart's injuries. This was not tantamount to an explanation of what kind of movement or degree of force would have been necessary to cause the injuries. Moreover, while some experts opined that Burkhart's account of her arrest and the Appellees' actions could properly account for the type of injuries she suffered, other experts testified similar to Daly that none of the witness testimonies explained the injuries.

Finally, in his testimony, Daly discussed the various risk factors for developing osteoporosis, and highlighted those present in Burkhart's case. Burkhart challenges this testimony as unsupported as Daly had not reviewed all of Burkhart's medical records prior to concluding which risk factors applied to Burkhart. However, the factors identified by Daly as applying to Burkhart were readily available from the records of Burkhart's treating physicians, which were based on their observations and Burkhart's own statements. Therefore, this aspect of Daly's testimony was not unsupported in the record.

We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED*

5